UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

MARK PRINGLE,                                    :

                         Petitioner,      :       10 Civ. 9659 (WHP)

    -against-                                   :       MEMORANDUM & ORDER

UNITED STATES OF AMERICA,                        :

                         Respondent.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/25/11

WILLIAM H. PAULEY III, District Judge:

        Petitioner pro se Mark Pringle ("Pringle") moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, Pringle's motion is denied.

## BACKGROUND

        On October 12, 2007, Pringle was arrested in connection with four armed robberies committed between April 27, 2007 and September 25, 2007. Pringle contends that shortly after his arrest, Assistant United States Attorney John Cronan ("Cronan") contacted his counsel, John Byrnes ("Byrnes") of the Federal Defenders of New York, Inc. to arrange a proffer session. (Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Petition") 1.) On December 4, 2007, Pringle was indicted on four counts of armed robbery in violation of 18 U.S.C. § 2113(a) and two counts of using and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Indictment, Dec. 4,

2007, ECF No. 9.) Sabrina Schroff ("Schroff") of the Federal Defenders was reassigned to represent Pringle. (Petition 1.)

At his first meeting with Schroff in December 2007, Pringle contends that she advised against cooperating with the Government. (Petition 1.) Nevertheless, in late January 2008, approximately forty-five days after she began representing Pringle, Shroff arranged a first proffer session with the Government. (Petition 1.) Pringle alleges that during that proffer session, Shroff advised him not to sign or initial a photograph of his accomplice. (Petition 1.) Cronan does not recall this incident. (Declaration of John P. Cronan dated Mar. 15, 2011 ("Cronan Decl.") ¶ 4.)

After three proffer sessions in February and March 2008, the Government determined that it would not offer Pringle a cooperation agreement. While the Government concluded that Pringle answered all questions truthfully, its decision was based on its judgment that Pringle could not provide substantial assistance. (Cronan Decl. ¶¶ 4-5.)

On May 22, 2008, Pringle pled guilty before Magistrate Judge Ronald Ellis to four counts of armed robbery and one count of using and brandishing a firearm during and in relation to a crime of violence. (Plea Tr. dated May 22, 2008 ("Plea Tr.") 1.) Pringle alleges that Shroff "seduced" him into accepting the plea agreement by promising that if he pleaded guilty, he would receive a sentence of 84 to 120 months' imprisonment and that a downward departure motion for substantial assistance to the Government would reduce his sentence below 84 months' imprisonment. (Petition 4.) However, the plea agreement stipulated a sentencing range of 171 to 192 months' imprisonment and provided that Pringle waived his right to appeal or otherwise challenge any sentence imposed by the Court that was within or below that guideline range. (Plea Tr. 7.) At a hearing prior to sentencing, Pringle stated that he had reviewed and

2

discussed both his plea agreement and the Sentencing Guidelines with his attorney and acknowledged that he was aware of the stipulated sentencing guidelines range of 171 to 192 months' imprisonment. (Plea Tr. 10.) On December 5, 2008, this Court sentenced Pringle to 181 months' imprisonment. (Tr. dated Dec. 5, 2008, at 10.)

Pringle also contends that he expressed concern to Shroff that a sentence pursuant to the enhanced provisions for armed bank robberies under § 2113(d), as well as § 924(c)'s mandatory minimum consecutive sentence, would constitute double jeopardy and that Shroff failed to raise this issue with the Court. (Petition 5.)

## DISCUSSION

Pringle raises four claims in his petition, three of which relate to allegations that Shroff rendered ineffective assistance during Pringle's efforts to cooperate with the Government. Specifically, Pringle contends that: (1) his constitutional rights to effective assistance of counsel and due process were violated because (a) a "conflict of interest" existed between Pringle and Schroff over whether to cooperate with the Government, (b) Shroff allowed forty-five days to lapse prior to scheduling proffers, and (c) Shroff advised him not to initial a photograph of a co-conspirator that Pringle identified at a proffer session; (2) his constitutional right to due process was violated because the prosecutor breached his ethical obligations by continuing to conduct proffers with Pringle despite Shroff's alleged errors; (3) his constitutional rights to effective assistance of counsel and due process were violated when Shroff assured him that if he were to plead guilty he would receive a sentence of not more than 120 months' imprisonment and that a motion for a downward departure for substantial assistance under U.S.S.G. 5K1.1 would reduce the sentence further; and (4) his constitutional rights to effective assistance of counsel and the

3

avoidance of double jeopardy were violated by a sentence of 181 months, which included both an enhancement for armed bank robbery under § 2113(d) and a mandatory minimum consecutive sentence under § 924(c).

I. Ineffective Assistance of Counsel at the Proffers

To prevail on an ineffective assistance of counsel claim, a petitioner must (1) show that his counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms," and (2) "affirmatively prove prejudice" by demonstrating that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 693-94 (1984). "[T]he prejudice component of the Strickland test . . . focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). A reasonable probability of a different result "is a probability sufficient to undermine confidence in the outcome." Flores v. Demskie, 215 F.3d 293, 304 (2d Cir. 2000) (quoting Strickland, 466 U.S. at 694).

A. Conflict of Interest

Pringle asserts a "conflict of interest" arising from Shroff's initial advice against cooperation. Although ordinarily, a defendant must demonstrate that his counsel's deficiency was prejudicial, "prejudice is presumed . . . if the defendant demonstrates that counsel actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." Strickland, 466 U.S. at 692 (citing Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)) (internal quotations omitted); see also Eisemann v. Herbert, 401 F.3d 102, 107 (2d Cir. 2005). Here, however, Pringle has not demonstrated an actual conflict of interest.

4

"An actual conflict of interest arises during representation when the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" United States v. Moree, 220 F.3d 65, 69 (2d Cir. 2000) (internal citation omitted). The alleged conflict here, however, is nothing more than a simple disagreement between Petitioner and his counsel. Such disputes are commonplace, and "not every disagreement with defense counsel amounts to a conflict of interest." United States v. Davis, 239 F.3d 283, 286 (2d Cir. 2001). Petitioner's allegations "describe only competent counsel's candid advice about the risks" of cooperating with the Government, and not any actual divergence of interests. Davis, 239 F.3d at 286; see also In re Agent Orange Product Liab. Litig., 818 F.2d 179, 186-87 (2d Cir. 1987) (in the absence of diverging interests, an attorney's and client's opposing strategies constitutes a mere difference of opinion, not a conflict of interest). Because there is no conflict of interest, this Court will not presume any prejudice to Pringle.

B. Delay in Pursuing Proffer

Pringle asserts that Shroff's forty-five day delay in initiating proffer sessions constituted ineffective assistance of counsel because it impeded his ability to reach a cooperation agreement with the Government. However, Shroff ultimately arranged three proffer sessions with the Government, and the decision not to offer a cooperation agreement rested on the Government's determination that Pringle could not provide substantial assistance in any on-going investigations. (Cronan Decl. at ¶¶ 4-5.) Accordingly, Pringle has not demonstrated any actual prejudice.

C. Initialing and Signing of Photographs

Pringle next argues that Shroff's advice not to initial or sign any photographs also constituted ineffective assistance of counsel because it interfered with his efforts to impress the

5

Government with his cooperation. However, as discussed above, the decision not to offer Pringle a cooperation agreement was based on the Government's determination that he could not provide substantial assistance. Accordingly, Pringle has not demonstrated any actual prejudice.

II. <u>Prosecutorial Misconduct at the Proffers</u>

In a related argument, Pringle argues that the Government violated its ethical obligations by continuing to conduct proffers with him despite Schroff's purportedly ineffective assistance. However, because Schroff's assistance relating to these proffers was not ineffective, this argument fails.

III. <u>Ineffective Assistance of Counsel During Plea Negotiations</u>

Pringle next argues that Shroff "seduced" him into accepting the plea agreement by promising him that if he were to plead guilty he would receive a sentence between 84 and 120 months' imprisonment, which could be reduced further by a downward departure motion under U.S.S.G. 5K1.1. However, Pringle's claim is belied by his plea agreement and his statements under oath to the Court. "[I]n the absence of any credible evidence to the contrary, the court is permitted to rely upon the defendant's sworn statements, made in open court, that: his plea was knowing and voluntary . . . [,] he discussed the plea with his attorney, he knew that he could not withdraw the plea, he knew that no promises had been made except those contained in the plea agreement, and he was satisfied with the advice of counsel." <u>United States v. Soler</u>, 289 F. Supp. 2d 210, 216 (D. Conn. 2003); <u>cf.</u> <u>United States v. Gonzalez</u>, --- F. 3d ----, 2011 WL 2937901, at *14 (2d Cir. July 22, 2011) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.") At his plea,

6

Pringle acknowledged that he had reviewed his plea agreement and discussed it and the sentencing guidelines with Shroff. He further stated that he understood that he was waiving his right to challenge any sentence within or below the guideline range of 171 to 192 months' imprisonment. Given these sworn statements, Pringle's allegations are insufficient to establish ineffective assistance of counsel. See United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (appellant's claim that his attorney coerced him into accepting a guilty plea was without merit because "his unequivocal admissions under oath contradict his unsupported assertions of pressure").

IV. Double Jeopardy

Lastly, Pringle argues that his sentence pursuant to both a mandatory minimum consecutive sentence under the enhancements for armed bank robberies under § 2113(d) and the consecutive mandatory minimum pursuant to § 924(c) violated the Double Jeopardy Clause. Pringle also asserts a related claim for ineffective assistance of counsel, on the grounds that Shroff failed to raise this matter with the Court.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Where the same conduct violates two statutory provisions, whether each violation is a separate offense is a question of legislative intent. See Garrett v. United States, 471 U.S. 773, 778 (1985).

Prior to 1984, the Supreme Court held that a sentence under § 924(c) that ran consecutively to an enhanced maximum punishment under § 2113(d) violated the Double Jeopardy Clause. See United States v. Simpson, 435 U.S. 6, 12-13 (1978); Busic v. United

States, 446 U.S. 398 (1980). In response to Simpson and Busic, the Senate Committee on the Judiciary issued the following report to Congress:

> [S]ubsection 924(c) should be completely revised to ensure that all persons who commit Federal crimes of violence, including those crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon, receive a mandatory sentence, without the possibility of the sentence being made to run concurrently with that for the underlying offense or for any other crime without the possibility of a probationary sentence or parole.

S. Rep. No. 225, 98th Cong., 2d Sess. 313 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3491 (footnote omitted). Following the report, Congress revised § 924(c) to read that "any person who, during and in relation to any crime of violence . . . uses or carries a firearm . . . shall, in addition to the punishment for such crime" receive a mandatory minimum sentence of imprisonment varying under each individual circumstance. 18 U.S.C. § 924(c)(1)(A) (emphasis added). The revised statute further provides that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed" for the predicate crime of violence. 18 U.S.C. § 924(c)(1)(D)(ii). Section 924(c)(3) defines a "crime of violence" as any felony that "has an element the use, attempted use, or threatened use of physical force against the person or property of another." Armed robbery under § 2113 is clearly a crime of violence within the meaning of § 924(c).

Accordingly, the plain meaning and legislative history of § 924(c) demonstrate that Congress authorized consecutive sentences under § 2113(d) and § 924(c). See United States v. Mohammed, 820 (2d Cir. 1994) (noting, in dicta, that "[S]ection 924(c) was amended to ensure that [§ 2113] carried mandatory consecutive sentences when committed with a firearm"); see also United States v. Gonzalez, 520 U.S. 1, 10 (1997) (noting that "Congress made clear its

8

desire to run § 924(c) enhancements consecutively to all other prison terms, regardless of whether they were imposed under firearms enhancement statutes similar to § 924(c)"). Therefore, Pringle's sentence does not violate double jeopardy. For the same reasons, Pringle's related ineffective assistance of counsel claim is without merit.

## CONCLUSION

For the foregoing reasons, petitioner Mark Pringle's motion to vacate, set aside, or correct his sentence is denied. Because Pringle has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. See 28 U.S.C. § 2253(c). In addition, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

The Clerk of the Court is directed to dismiss all pending motions and mark this case as closed.

Dated: August 25, 2011
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Copy Mailed To:*

Mark Pringle
Reg# 31590-054
FCI Fairton
P.O. Box 420
Fairton, NJ 08320
*Petitioner pro se*

Michael Douglas Maimin
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, NY 10007
*Counsel for Defendant*